**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

JENNIFER NELSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HIGHTOWER HOLDING, LLC,

Defendant.

**Case No.:**

**COMPLAINT – CLASS ACTION**

**JURY TRIAL DEMANDED**

Plaintiff Jennifer Nelson ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Hightower Holding, LLC ("Defendant"). Plaintiff alleges the following upon information and belief based on and the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1. Plaintiff and the proposed Class Members bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information[1] ("PII" or "Private Information") that was impacted in a data breach that Defendant publicly disclosed in March 2026 (the "Data Breach" or the "Breach").

2. Plaintiff's claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

transfer that information.

3. Defendant is a Chicago based holding company that, through its subsidiaries, provides financial and retirement planning, wealth management, and investment advisory services.

4. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on their affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5. On January 9, 2026, Defendant became aware of a compromised account causing unauthorized access to its IT Network.[2] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[3]

6. Defendant's investigation determined that between January 8, 2026, and January 9, 2026, certain files were downloaded without authorization.[4] Upon information and belief, the following types of Private Information were compromised as a result of the Data Breach: name, Social Security number, and driver's license number.

7. On March 23, 2026 – more than three months after learning about the Data Breach – Defendant issued a notice of public disclosure.

8. Defendant failed to take precautions designed to keep individuals' Private Information secure.

9. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information,

---

[2] https://www.maine.gov/cgi-bin/agviewerad/ret?loc=3718
[3] *Id.*
[4] *Id.*

yet breached their duty by failing to implement or maintain adequate security practices.

10. The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

11. Defendant failed to use reasonable security procedures and practice appropriate to the nature of the sensitive, unencrypted information they maintained for Plaintiff and Class Members, causing the exposure of Plaintiff and Class Members' Private Information.

12. As a result of Defendant's inadequate digital security and notice process, Plaintiff and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries including financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and theft of personal and financial information.

13. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendant's conduct amounts to at least negligence and violates federal and state statutes.

14. Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant for: negligence; negligence *per se*; unjust

enrichment, and breach of implied contract, seeking actual and putative damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

15. Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

16. Plaintiff is a citizen and resident of Cedar Hill, Texas.

17. Defendant is a limited liability company that maintains its principal place of business at 200 West Madison Street, Suite 2500, Chicago, IL 60606.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs. The number of Class Members is numerous, with many members of whom have different citizenship from Defendant.[5] Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

19. This Court has personal jurisdiction because Defendant maintains its principal place of business in this District, regularly conduct business in this District, and has sufficient minimum contacts in this District.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District. Moreover,

[5] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/4279500a-59cc-4b07-bbc3-62ed0322bcc5.html

Defendant is domiciled in this District and maintains Plaintiff's and Class Members' Private Information in this District.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

21. Defendant is a Chicago based holding company that, through its subsidiaries, provides financial and retirement planning, wealth management, and investment advisory services.

22. Defendant requires individuals to provide it with sensitive Private Information.

23. Defendant collected and stored Plaintiff's and the proposed Class Members' Private Information on its information technology computer systems.

24. Upon information and belief, Defendant made promises and representations to individuals', including Plaintiff and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained.

25. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26. As a result of collecting and storing the Private Information of Plaintiff and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiff and the Class Members' Private Information from disclosure to third parties.

### B. The Data Breach

27. On January 9, 2026, Defendant became aware of a compromised account causing

unauthorized access to its IT Network.[6] In response, Defendant launched an investigation to determine the nature and scope of the Data Breach.[7]

28. Defendant's investigation determined that between January 8, 2026, and January 9, 2026, certain files were downloaded without authorization.[8] Upon information and belief, the following types of Private Information were compromised as a result of the Data Breach: name, Social Security number, and driver's license number.

29. On March 23, 2026 – more than three months after learning about the Data Breach – Defendant issued a notice of public disclosure.

30. While Defendant did notify Plaintiff and the Class of the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of identity theft, providing Plaintiff and the Class with credit monitoring and "proactive fraud assistance" services.[9]

31. Defendant failed to take precautions designed to keep individuals' Private Information secure.

32. While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiff and Class Members.

33. Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

**C. Data Breaches Are Preventable**

---

[6] https://www.maine.gov/cgi-bin/agviewerad/ret?loc=3718
[7] *Id.*
[8] *Id.*
[9] https://www.maine.gov/cgi-bin/agviewerad/ret?loc=2968

34. Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing Private Information.

35. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[10]

36. To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.
- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls, including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

[10] How to Protect Your Networks from RANSOMWARE, at 3, *available at:* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[11]

37. To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials.

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise.

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely.

**Build credential hygiene**

[11] *Id.* at 3-4.

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords.

**Apply principle of least privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events.

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[12]

38. Given that Defendant was storing the sensitive Private Information of individuals, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

39. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of, upon information and belief, millions of individuals, including that of Plaintiff and Class Members.

**D. Defendant Fails to Comply with FTC Guidelines**

40. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

---

[12] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/

41. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[13]

42. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[14]

43. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

44. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential customer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"),

---

[13] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf

[14] *Id.*

15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

45. These FTC enforcement actions include actions against companies, like Defendant.

46. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

47. Defendant failed to properly implement basic data security practices.

48. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access individuals Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

49. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of individuals, Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**E. Defendant Fails to Comply with Industry Standards.**

50. As noted above, experts studying cyber security routinely identify companies in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

51. Several best practices have been identified that, at a minimum, should be implemented by companies in possession of Private Information, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry's best practices, including a failure to implement multi-factor authentication.

52. Other best cybersecurity practices that are standard for companies include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

53. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

54. These foregoing frameworks are existing and applicable industry standards for companies safeguarding individuals' data, and upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

**F. Common Injuries and Damages.**

55. As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

**G. The Harm Caused by the Data Breach Now and Going Forward**

56. Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your

personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[15]

57. The types of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft.

58. Plaintiff and Class Members face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach.

59. Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

60. When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web where malicious actors buy and sell that information for profit.[16]

61. For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity."[17] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with [PII] belonging to victims from countries all over the world."[18]

---

[15] *Prevention and Preparedness*, New York State Police, https://troopers.ny.gov/prevention-and-preparedness

[16] *Shining a Light on the Dark Web with Identity Monitoring*, IDENTITYFORCE (Dec. 28, 2020) https://www.identityforce.com/blog/shining-light-dark-web-identity-monitoring

[17] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/

[18] *Id.*

62. PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[19] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[20]

63. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[21]

64. Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[22] Defendant did not rapidly report to Plaintiff and Class Members that their Private Information had been stolen.

65. As a result of the Data Breach, the Private Information of Plaintiff and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and

[19] *Id.*
[20] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015) https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft
[21] *2019 Internet Crime Report Released*, FBI (Feb. 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion
[22] *Id.*

resulting from, the Data Breach; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class Members' Private Information.

66. In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

67. Defendant disregarded the rights of Plaintiff and Class Members by (a) intentionally, wilfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers, and those belonging to its third-party vendors, were protected against unauthorized intrusions; (b) failing to disclose that they did not have adequately robust security protocols and training practices in place to safeguard Plaintiff and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; (d) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (e) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

68. The actual and adverse effects to Plaintiff and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft, identity fraud

and/or medical fraud directly or proximately caused by Defendant wrongful actions and/or inaction and the resulting Data Breach require Plaintiff and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiff and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

**H. Plaintiff's Experience**

69. At all times relevant, Plaintiff was a customer of Defendant.

70. Defendant was in possession of Plaintiff's Private Information before, during and after the Data Breach.

71. Plaintiff is very careful about the privacy and security of her PII. He does not knowingly transmit her PII over the internet in an unsafe manner. Plaintiff is careful to store any documents containing her PII in a secure location.

72. Plaintiff trusted Defendant would use reasonable measures to protect her Private Information according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

73. Plaintiff reasonably understood and expected that Defendant would safeguard her PII and timely and adequately notify her in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain her Private Information if he

believed that Defendant would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

74. Plaintiff greatly values her privacy and PII and takes reasonable steps to maintain the confidentiality of her Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

75. Plaintiff stores all documents containing Private Information in a secure location and destroys any documents he receives in the mail that contain any Private Information or that may contain any information that could otherwise be used to compromise her identity and credit card accounts. Moreover, he diligently chooses unique usernames and passwords for her various online accounts.

76. As a result of the Data Breach, Plaintiff has spent considerable time researching the Data Breach, reviewing her bank accounts, monitoring her credit report, changing her passwords and other necessary mitigation efforts. This is valuable time that Plaintiff spent at that he otherwise would have spent on other activities, including but not limited to work and/or recreation.

77. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress. This has been compounded by the fact that after the Data Breach occurred, Plaintiff experienced a significant uptick in spam text messages, calls, and emails.

78. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present and continued increased risk of identity theft and fraud for years to come.

79. Plaintiff has a continuing interest in ensuring that her PII, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

80. As a direct and traceable result of the Data Breach, Plaintiff suffered actual injury and damages after her PII was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her PII being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her sensitive information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff; and (g) other economic and non-economic harm.

## CLASS ALLEGATIONS

81. Plaintiff brings this class action, individually and on behalf of the following Nationwide Class:

> All persons in the United States who were impacted by the Data Breach publicly announced by Defendant (the "Class").

82. Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

83. Plaintiff reserves the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

84. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

85. Numerosity: The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes thousands of individuals.

86. Typicality of Claims: Plaintiff's claims are typical of those of other Class Members because Plaintiff, like the unnamed Class, had her Private Information compromised as a result of the Data Breach. Plaintiff is a member of the Class, and her claims are typical of the claims of the members of the Class. The harm suffered by Plaintiff is similar to the harm suffered by all other Class Members, which was caused by the same misconduct by Defendant.

87. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to, nor in conflict with, the Class. Plaintiff has retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

88. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for their wrongdoing as asserted herein.

89. Predominant Common Questions: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

b. Whether Defendant's data security systems, and those belonging to its third-party vendors, prior to and during the Data Breach complied with applicable data security laws and regulations.

c. Whether Defendant's storage of Plaintiff and Class Member's Private Information was done in a negligent manner.

d. Whether Defendant had a duty to protect and safeguard Plaintiff and Class Members' Private Information.

e. Whether Defendant's conduct was negligent.

f. Whether Defendant's conduct violated Plaintiff and Class Members' privacy.

g. Whether Defendant's conduct violated the statutes as set forth herein.

h. Whether Defendant's took sufficient steps to secure individuals' Private Information.

i. Whether Defendant was unjustly enriched; and

j. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

90. Information concerning Defendant's policies are available from Defendant's records.

91. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

92. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

93. Given that Defendant has not indicated any changes to their conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CAUSES OF ACTION
## COUNT I
## NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

94. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 93 as though fully set forth herein.

95. Plaintiff brings this claim individually and on behalf of the Class Members.

96. Defendant knowingly collected, came into possession of, and maintained Plaintiff and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

97. Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff and Class Members' Private Information.

98. Defendant had, and continues to have, a duty to timely disclose that Plaintiff and Class Members' Private Information within their possession was compromised and precisely the types of information that were compromised.

99. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that its systems and networks, those belonging to its third-party vendors, and the personnel responsible for them, adequately protected individuals' Private Information.

100. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. Defendant was in a position to ensure that its systems, and those belonging to its third-party vendors were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

101. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

102. Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' Private Information.

103. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff and Class Members' Private Information.

b. Failing to adequately monitor the security of their networks and systems; and

c. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

104. Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff and Class Members' Private Information within Defendant's possession.

105. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff and Class Members' Private Information.

106. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within Defendant's possession might have been compromised and precisely the type of information compromised.

107. Defendant breached the duties set forth in 15 U.S.C. § 45, the FTC guidelines, the National Institute of Standards and Technology's Framework for Improving Critical Infrastructure Cybersecurity, and other industry guidelines. In violation of 15 U.S.C. § 45, Defendant failed to implement proper data security procedures to adequately and reasonably protect Plaintiff and Class Members' Private Information. In violation of the FTC guidelines, *inter alia,* Defendant did not protect the Private Information it keeps; failed to properly dispose of personal information that was no longer needed; failed to encrypt information stored on computer networks; lacked the requisite understanding of its networks' vulnerabilities; and failed to implement policies to correct security issues.

108. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff and Class Members' Private Information would result in injury to Plaintiff and Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

109. It was foreseeable that the failure to adequately safeguard Plaintiff and Class Members' Private Information would result in injuries to Plaintiff and Class Members.

110. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff and Class Members' Private Information to be compromised.

111. But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their Private Information would not have been compromised.

112. As a result of Defendant's failure to timely notify Plaintiff and Class Members that their Private Information had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

113. As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; and overpayment for the services or

products that were received without adequate data security.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

114. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 93 as though fully set forth herein.

115. Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendants of failing to use reasonable measures to protect Plaintiff and Class Members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

116. Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff and Class Members' Private Information and by failing to comply with industry standards.

117. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems, or those belonging to Defendant's third-party vendors.

118. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act (and similar state statutes) were intended to protect.

119. Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

120. As a result of Defendant's negligence *per se*, Plaintiff and Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing, and correcting the current and future consequences of the Data Breach.

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

121. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 93 as though fully set forth herein.

122. Plaintiff and Class Members conferred a benefit upon Defendant by providing Defendant with their Private Information.

123. Defendant appreciated or had knowledge of the benefits conferred upon themselves by Plaintiff. Defendant also benefited from the receipt of Plaintiff and Class Members' Private Information.

124. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the Class Members' Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the proposed Class would not have provided their Private Information to Defendant had they known Defendant would not adequately protect their Private Information.

125. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by them because of their misconduct and the Data Breach they caused.

## COUNT IV
## BREACH OF IMPLIED CONTRACT
## (On Behalf of Plaintiff and the Class)

126. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 93 as though fully set forth herein.

127. Plaintiff and the Class provided and entrusted their Private Information to Defendant. Plaintiff and the Class provided their Private Information to Defendant as part of Defendant's regular business practices.

128. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant o ensure that the Private Information of Plaintiff and Class Members in its possession was secure.

129. Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their Private Information. In exchange, Defendant agreed to, among other things, and Plaintiff and the Class understood that Defendant would: (1) provide services to Plaintiff sand Class Members'; (2) take reasonable measures to protect the security and confidentiality of Plaintiff and Class Members' Private Information; and (3) protect Plaintiff and Class Members' Private Information in compliance with federal and state laws and regulations and industry standards.

130. Implied in these exchanges was a promise by Defendant to ensure the Private Information of Plaintiff and Class Members in their possession was only used to provide the

agreed-upon reasons, and that Defendant would take adequate measures to protect Plaintiff and Class Members' Private Information.

131. A material term of this contract is a covenant by Defendant that it takes reasonable efforts to safeguard that information. Defendant breached this covenant by allowing Plaintiff and Class Members' Private Information to be accessed in the Data Breach.

132. Indeed, implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that both parties would maintain information confidentially and securely.

133. These exchanges constituted an agreement and meeting of the minds between the parties.

134. When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class Members would not have disclosed their Private Information to Defendant but for the prospect of utilizing Defendant services. Conversely, Defendant presumably would not have taken Plaintiff and Class Members' Private Information if they did not intend to provide Plaintiff and Class Members with its services.

135. Defendant was therefore required to reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure and use.

136. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Private Information.

137. Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' Private Information.

138. Defendant's failure to implement adequate measures to protect the Private Information of Plaintiff and Class Members violated the purpose of the agreement between the parties.

139. As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered damages as described in detail above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

(a) For an order determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and her counsel as Class Counsel.

(b) For an order declaring that Defendant's conduct violates the laws referenced herein.

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein.

(d) For damages in amounts to be determined by the Court and/or jury.

(e) For an award of statutory damages or penalties to the extent available.

(f) For pre-judgment interest on all amounts awarded.

(g) For an order of restitution and all other forms of monetary relief; and

(h) Such other and further relief as this Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: March 26, 2026

By: */s/ Jeff Ostrow*
Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**

One W Las Olas Blvd, Suite 500
Fort Lauderdale, FL 33301
Tel.: (954) 525-4100
ostrow@kolawyers.com

*Attorney for Plaintiff and the Proposed Class*